UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KADLUBEK FAMILY
REVOCABLE LIVING TRUST,                      No. 15-10736-t11

    Debtor.

## MEMORANDUM OPINION

Before the Court is a secured creditor's motion for relief from the automatic stay, sought so it can continue its pre-petition foreclosure action on the debtor's strip shopping center in Albuquerque, New Mexico. The Court held an evidentiary hearing on the motion on January 13, 2016. For the reasons set forth below, the Court rules that the motion should be denied without prejudice, so the Debtor can attempt to confirm its plan of reorganization/liquidation.

    I.    FINDINGS OF FACT

The Court finds the following facts:[1]

Debtor is a trust that owns residential, mixed use, and commercial real estate. The settlor and beneficiary of the trust is Joseph Kadlubek, an 84-year old widower. The trustees are Mr. Kadlubek's daughters, Gwen Gomez and Vaune Kadlubek. The net income from the trust corpus is used to support Mr. Kadlubek.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. In making these findings, the Court took judicial notice of the docket, including reviewing the plan filed six days after the hearing date. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket").

Debtor's assets are worth between $3,000,000 and $3,500,000. Its debts total about $2,000,000.

The property at issue is a small "strip" shopping center with a street address of 4605-4615 Menaul Blvd. NE, Albuquerque, NM 87110 (the "Property"). The Property has seven units fronting Menaul Boulevard and one in the rear of the building. The trust leases the units to tenants such as restaurants, salons, insurance brokers, tax preparers, or accountants. The Property is managed by Roger Cox and Associates, a local property management company.

Pineda REO, LLC ("Pineda") holds a promissory note signed by the Debtor, evidencing a debt of about $1.6 million.[2] The note, which is secured by a first mortgage on the Property, matured in October 2013 and remains unpaid. Despite the fact that the note matured and is now payable in full, the Debtor has been making monthly payments of about $5,120 throughout the bankruptcy case.

Pineda filed a collection and foreclosure action in state court in June 2014. Progress in the foreclosure action prompted the Debtor's March 25, 2015 bankruptcy filing.

The Property is worth substantially less than the debt to Pineda. Estimates of Property's current value range from about $750,000 to about $925,000.[3]

The Property is being adequately maintained and insured. In general, the real estate market in Albuquerque for commercial properties like the Property is stable. A major concern about the Property is the tenant occupancy rate. As of the date of the hearing, five units were occupied, compared to six on the petition date. More importantly, a major tenant (a restaurant owned by Jennifer James, a chef of some local renown), has moved out or is leaving shortly. Loss of tenants

---

[2] There is some dispute about the amount owed, and the Court makes no finding in that regard.
[3] The value of the Property is disputed. The Court makes no specific finding about the Property's value, only that the Property is worth less than the amount owed to Pineda.

has an adverse effect on value, and Pineda is rightly concerned that its collateral has lost value post-petition.

The Debtor and Roger Cox are taking reasonable steps to re-tenant the Property. In addition, the Debtor's broker, Colliers International, is marketing the Property appropriately for sale.

Pineda's representative testified that, if the automatic stay were lifted, he did not know how much Pineda would credit bid for the Property at a foreclosure sale. According to the representative, Pineda likely would make a decision on a credit bid amount shortly before the sale. Debtor is worried that, as in many foreclosure sales, Pineda's bid amount could be substantially less than the Debtor could realize if it retained control over the re-tenanting and marketing of the Property, and was able to sell it in a commercially reasonable manner. Thus, this case primarily is a fight over who gets to liquidate the Property. Pineda does not have confidence that the Debtor will do enough to attract and retain tenants, adversely affecting value, nor that the Debtor will sell the Property timely. For its part, Debtor does not have confidence Pineda would bid fair market value at a special master's sale of the Property. The lower the sales price, the higher Pineda's deficiency claim and the lower the value of trust assets available to beneficiaries.

No matter what happens, Pineda is highly likely to be paid in full. The real question is how much of the estate will be left for Mr. Kadlubek and his heirs after Pineda and other creditors have been paid.

As of the date of the hearing Debtor was collecting about $5,870 per month in rent from the Property. This amount will drop to about $4,000 a month once the Jennifer James restaurant leaves. In addition, Debtor owns unencumbered real estate in Santa Barbara, California, which is worth about $1,600,000. Starting in April 2016, Debtor expects to receive $7,900 in monthly

rental income from the Santa Barbara property, so Debtor's monthly income will be at least $12,000 until it finds new tenants for the Property. Further, Debtor's disclosure statement estimates monthly income of $19,000 per month starting about a year after plan confirmation. That figure may be realistic, but the Court has no evidence confirming its accuracy.

Debtor filed a plan on January 19, 2016, after the evidentiary hearing. In the plan Debtor proposes to treat Pineda's claim as follows:[4]

- The loan would be re-amortized over 20 years, with a five year balloon;
- Interest rate of 4.5%;
- An initial payment of $50,000 and monthly payments of about $10,000;
- New liens on the debtor's unencumbered property, to the extent needed to fully secure the debt;
- The debtor can sell any encumbered parcel, including the Property, free and clear of Pineda's lien, with the lien to attach to the proceeds;
- The Debtor could deed the Property to Pineda at any time, and get a credit for the value of the Property, as determined by agreement or by an independent appraisal obtained by the Debtor.
- Debtor would retain control over the re-tenanting and marketing of the Property and its other real estate.

A final hearing on confirmation of the plan is scheduled for March 3, 2016.

## II. DISCUSSION

Pineda argues it is entitled to stay relief under 11 USC § 362(d)(2),[5] which provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling modifying, or conditioning such stay—
…
    (2) with respect to a stay of an act against property under subsection (a) of this section, if—

---

[4] The plan proposes three alternative treatments. The Court finds it is very unlikely Pineda would choose either of the first two, i.e., a deed in lieu of foreclosure and $100,000 in full satisfaction of Pineda's claims, or the Debtor's sale of the Property within 5 years, with the net proceeds paid to Pineda in full satisfaction of its claims, plus monthly payments of $5,120 pending the sale. Because of that, only the third treatment is discussed in detail.

[5] Unless noted otherwise, all statutory references are to 11 U.S.C.

> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

   A.   No Equity.

Pineda has the burden of proving that there is no equity in the Property. § 362(g)(1). At the hearing Debtor's co-trustee Gwen Gomez admitted the lack of equity. One can quibble about the value of the Property but there is no dispute it is worth substantially less than Pineda's debt. Pineda has carried its burden of proof.

   B.   Necessary to Effective Reorganization.

If a creditor establishes a lack of equity in a subject property, the debtor has the burden of showing that the property is necessary to an effective reorganization. § 362(g)(2). Any analysis of § 362(d)(2)(B) begins with the Supreme Court's dicta in *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988): "What [necessary to an effective reorganization] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means … that there must be a 'reasonable possibility of a successful reorganization within a reasonable time." 484 U.S. at 376. Although the *Timbers* case turned on § 362(d)(1), the Supreme Court explained that § 362(d)(2) prevents a creditor from suffering an "inordinate and extortionate delay." *Id.*

From this dicta, courts have found two separate but "intermingled" requirements in § 362(d)(2) cases. *See generally In re Panther Mountain*, 438 B.R. 169, 180-81 (Bankr. E.D. Ark. 2010). First, Debtor must make a showing that the property is *necessary*. 438 B.R. at 180. In addition, "the necessity of the property is only important to the extent that it exists simultaneously with a reasonable possibility of reorganization." *Id.* at 180-81. Under this second requirement, the Debtor must show there is a "reasonable possibility of successful reorganization within a

reasonable time." *Timbers*, 484 U.S. at 375; *In re Dublin Properties,* 12 B.R. 77, 80 (Bankr. E.D. Pa. 1981).

        1.     <u>Is the Property Necessary</u>? Property is necessary if it furthers "the interests of the estate through rehabilitation or liquidation." *In re Keller*, 45 B.R. 469, 472 (Bankr. N.D. Iowa 1984). *In re Koopmans,* 22 B.R. 395, 407 (Bankr. D. Utah 1982), an early case addressing this element of § 362(d)(2), stated:

> The property may be important to the liquidation of other property, as for example a warehouse or refrigerator which, although overencumbered, may be needed to store inventory or groceries pending sale. The property standing alone may have no equity, but when sold as a package, may bring a better price for other assets, as for example, workings for watches yet to be assembled, or contiguous parcels of real property. Or the property may be sold for the direct benefit of junior lienors and the indirect benefit of unsecured creditors. Indeed, it may have no equity but may deserve the protection of the stay because, in order to continue operations, its value has been appropriated to supply adequate protection for others or pledged to secure postpetition credit.

*See also In re Commonwealth Renewable Energy, Inc.,* 540 B.R. 173, 194 (W.D. Pa. 2015) (citing *Koopmans*); *In re Harper Development, Inc.,* 2002 WL 32114481, at *3 (Bankr. E.D. Ark. 2002) (quoting *Koopmans*).[6]

Either liquidation or rehabilitation plans may be an "effective reorganization" under § 362(d)(2)(B). *See United Sav. Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 808 F.2d 363, 371 n.14 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988) ("[T]here may be circumstances under which the debtor is able to satisfy the "effective reorganization" test of § 362(d)(2) by showing that the property at issue is necessary to an effective liquidation of the debtor under

---

[6] *Koopmans,* which was decided before *Timbers*, focused on whether the property was necessary, not on whether a plan was in prospect. *Timbers* expanded the scope of the inquiry and therefore limited *Koopmans*. The case is still cited, however, for its analysis of whether property is necessary. *See, e.g., Harper Development*, 2002 WL 32114481 at *3 (cited *Koopmans* for the proposition that debtor must show that the property "furthers the interest of the estate through rehabilitation or liquidation").

Chapter 11, as distinguished from an effective rehabilitation of the debtor"). *See also In re Diplomat Elecs. Corp.,* 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988) ("[A] liquidating plan of reorganization which is more advantageous to creditors because it is an orderly liquidation may nonetheless constitute an 'effective reorganization'"); *In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 784-85 (Bankr. W.D. Pa. 1988) (the concept of reorganization includes liquidation). *Cf. JCP Properties, Ltd.*, 540 B.R. 596, 617-18 (Bankr. S.D. Tex. 2015) (5th Circuit law unsettled whether a liquidation plan may be an effective reorganization under § 362(d)(2).) Liquidation is expressly provided for in Chapter 11. *See* § 1123(b)(4).

Under a liquidation plan, property may further the interest of the estate or creditors if retaining and liquidating it would benefit the estate. *See Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1354 n. 19 (5th Cir. 1989) (retaining property appropriate if it would bring a greater price through liquidation plan than through foreclosure). *See also in re Conroe Forge & Mfg. Corp.*, 82 B.R. at 785 ("In a liquidating Chapter 11 where Debtor has ceased operations and collateral value is not decreasing, ordinarily all property will be necessary for an effective reorganization."). Where there is no such benefit, on the other hand, retaining property to sell it is not allowed. *See, e.g., In re 6200 Ridge, Inc.*, 69 B.R. 837, 844 n.12 (Bankr. E.D. Pa. 1987) (in granting stay relief, the court held that in an insolvent, single asset real estate case, retaining property and selling it would not benefit estate or any creditors).

Here, Debtor would like to control the sale of the Property because it believes it could obtain a higher price than Pineda would realize in foreclosure. It is impossible to know whether that is true, but it seems reasonable. The beneficiary of any increase in the Property's sales price would be equity (in this case Mr. Kadlubek and his heirs), because it would reduce the deficiency owed to Pineda and payable from other estate assets. Analogizing to the cases holding that

liquidating an asset for the benefit of unsecured creditors can be "necessary," the Court concludes that with a solvent estate, liquidation of an asset for the benefit of equity also can be "necessary."[7] It seems reasonable to allow the Debtor to try to confirm a plan that would benefit equity by re-tenanting the Property and selling it through normal commercial channels rather than by foreclosure. The Court concludes that Debtor carried its burden of proving the first prong of the necessary to an effective reorganization requirement.

        2.      <u>Reasonable Possibility of Reorganizing</u>. Debtor must also show that it has a "reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 484 U.S. at 376. "The fact that a debtor lacks equity in the property in question is not fatal where the secured claimant is adequately protected, the debtor has made progress in formulating a plan and there is a reasonable possibility of confirmation within a reasonable time." *In re White Plains Dev. Corp.*, 140 B.R. 948, 951 (Bankr. S.D.N.Y 1992).

Relief from stay should be denied where a debtor shows (1) it is meaningfully moving toward a plan, and (2) successful reorganization is not a "mere financial pipedream." *Planned Systems Inc.*, 78 B.R. 852, 866 (Bankr. S.D. Ohio 1987). Relief from stay is not appropriate where the Debtor is moving meaningfully toward confirmation. *Matter of Holly's, Inc.*, 140 B.R. 643,

---

[7] When a Chapter 11 estate's assets are not enough to pay creditors in full, the duties of the debtor in possession and/or Chapter 11 trustee are owed to creditors, primarily unsecured creditors. *See* § 1129(b) (generally, under cramdown provisions, impaired unsecured creditors have right to receive value to exclusion of ownership interests); *see also* § 726 (in Chapter 7, unsecured creditors are paid in full before ownership interests). In a solvent estate, on the other hand, the debtor in possession/trustee must also take into account the interests of equity. *See In re George Schumann Tire & Battery Co., Inc.*, 145 B.R. 104, 107 (Bankr. M.D. Fla. 1992) ("There is hardly any doubt that upon the showing of surplus funds in the estate after distribution to creditors, a Chapter 7 debtor is considered a party in interest. This is so because under § 726 all surplus funds shall be returned to the Debtor."). *See also* 4 Norton Bankr. L. & Prac. 3d § 85:8 (2016) (if the estate is solvent, the failure of a trustee to return any surplus to the debtor is a breach of fiduciary duty); § 1129(b)(2)(C)(i) (equity interests have right to receive their liquidation preference or value of their interest.).

700 (Bankr. W.D. Mich. 1992) ("When considering the debtor's burden of proof target under § 362(d)(2)(B), one consideration is a secured creditor may be expected to bear some reasonable delay while the debtor is moving meaningfully to propose a plan. Conversely, a secured creditor should not bear inordinate delay if the debtor is not progressing to plan confirmation."). Debtor must show that a possible reorganization is not a "mere financial pipe dream." *In re Jug End in The Berkshires*, *Inc.*, 46 B.R. 892, 902 (Bankr. D. Mass. 1985), cited in *Planned Systems*, 78 B.R. at 867.

In judging the reasonableness of delay, courts analyze whether a failed reorganization would likely mean less for the undersecured creditor/movant and/or unsecured creditors. *See Timbers*, 808 F.2d at 373 (stay relief appropriate to avoid excessive administrative and interest expense which eats away at distribution to unsecured creditors). This is not a major concern here because of the uncontested solvency of Debtor's estate.

If a plan has been filed, the debtor need only show that it "has a realistic chance of being confirmed and not patently unconfirmable." *In re White Plains Commercial Funding,* 140 B.R. at 951 (citing *In re Ashgrove Apartments of DeKalb County, Ltd.* 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990). *See also Planned Systems*, 78 B.R. at 866 (Debtor should have broad outline of possible plan of reorganization).

In this case, the Debtor's estate is solvent. Furthermore, Debtor has enough cash flow to make principal and interest payments while the Property is re-tenanted and marketed. It appears Debtor could make monthly payments, sell unencumbered property, and/or could grant Pineda liens on unencumbered property while Debtor rehabilitates and sells the Property.

The Debtor has a reasonable chance of confirming a plan in the near future. A confirmation hearing is scheduled within 30 days. Without getting into detail about the proposed plan, it is not

"unconfirmable on its face." Furthermore, it seems to the Court that a solvent debtor with current monthly income and a willingness to liquidate as needed to pay creditors in full should be a good candidate to confirm a plan of liquidation.

Pineda argues that the plan cannot be completed in a reasonable amount of time because it may take several years to rehabilitate the property to sell it. This argument is not well taken. Pineda is the holder of long-term secured debt, and it is reasonable to propose that the debt be repaid over time. When the subject loan was made, it was amortized over a number of years (the amortization schedule is not in evidence), with a five year call. The proposed plan treatment is similar, and includes a $50,000 initial payment and $10,000 monthly payments pending a sale. While the Court is not ruling on whether any of the proposed plan terms are fair and equitable or otherwise comply with § 1129,[8] a proposal to pay a matured commercial real estate loan over five years is not cause to lift the stay.

### III. CONCLUSION

Pineda carried its burden of showing that there is no equity in the Property, while Debtor met its burden of showing that the Property is necessary for an effective reorganization (or in this case partial liquidation). Debtor should be given a chance to try to confirm its plan. The Court will therefore deny Pineda's motion for relief from stay, without prejudice to revisiting the issue if the Debtor cannot confirm a plan in the reasonably near future.

A separate order consistent with this opinion will be entered.

---

[8] Among other things, the Court is curious whether there is legal authority to support Debtor's proposal that Pineda be forced to take the Property back and give credit for a value determined by an appraiser selected by the Debtor.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 11, 2016

Copies to:

James A. Askew
320 Gold Ave. SW, Ste. 300A
Albuquerque, NM  87102

Daniel A. White
320 Gold Ave SW, Ste. 300A
Albuquerque, NM  87102

Katharine C. Downey
P.O. Box 1945
Albuquerque, NM  87103

Benjamin Thomas
P.O Box 1945
Albuquerque, NM  87103